# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SONIA POLICARPI-DATRINDADE**     **CIVIL ACTION NO.**

**VERSUS**

**23-145-BAJ-EWD**

**GARRISON PROPERTY AND
CASUALTY INSURANCE COMPANY,
HARTFORD INSURANCE COMPANY OF
THE MIDWEST AND ELAINE PENOT**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 16, 2024.

**ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SONIA POLICARPI-DATRINDADE

VERSUS

GARRISON PROPERTY AND
CASUALTY INSURANCE COMPANY,
HARTFORD INSURANCE COMPANY OF
THE MIDWEST AND ELAINE PENOT

CIVIL ACTION NO.

23-145-BAJ-EWD

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion to Remand, filed by Sonia Policarpi-Datrindade ("Plaintiff").[1] Removing Defendant Garrison Property and Casualty Insurance Company ("Garrison") opposes the Motion.[2] Because Garrison has not established complete diversity of citizenship between the parties, it is recommended[3] that the Motion be granted, and that this matter be remanded to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana for lack of subject matter jurisdiction.

I.  **BACKGROUND**

This civil action arises out of injuries Plaintiff alleges she sustained in a motor vehicle accident that occurred on September 10, 2021 in East Baton Rouge Parish.[4] Plaintiff, a Louisiana domiciliary, alleges she was rear-ended by a vehicle operated by another Louisiana domiciliary, Elaine Penot ("Penot"), while driving in the parking lot of a Benny's Car Wash.[5]

On August 18, 2022, Plaintiff filed her Petition for Damages in state court against Penot; Penot's insurer, Hartford Insurance Company of the Midwest ("Hartford"); and Plaintiff's un-

---

[1] R. Doc. 8.
[2] R. Doc. 9.
[3] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review." *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).
[4] R. Doc. 11-1, ¶ IV.
[5] R. Doc. 11-1, ¶ I-IV.

/under insured motorist ("UM/UIM") insurer, Garrison. Plaintiff alleges the accident was Penot's fault,[6] and that, Garrison, as her UM/UIM insurer, is jointly and solidarily liable with Penot and Hartford for the damages because Penot's Hartford insurance policy is insufficient to fully compensate Plaintiff.[7]

On February 27, 2023, Garrison removed the case to this Court on the basis of diversity subject matter jurisdiction under 28 U.S.C. § 1332.[8] Garrison admits that Penot and Plaintiff are not completely diverse because they are both Louisiana domiciliaries,[9] but maintains that removal was proper because a valid and enforceable settlement agreement was reached between Plaintiff, Penot, and Hartford before removal, such that the Penot's non-diverse citizenship should be disregarded in evaluating diversity subject matter jurisdiction.[10] Plaintiff seeks remand, denying that she entered a binding settlement agreement with Penot and Hartford.[11] In response, Garrison again urges the Court to find that Penot's citizenship should be disregarded based on a pre-removal settlement.[12] The parties also provided supplemental briefing, as ordered by the Court.[13]

II. **LAW AND ANALYSIS**

   A. **Standard for Remand**

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[14] When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the

---

[6] R. Doc. 11-1, ⁋ V.
[7] R. Doc. 11-1, ¶ IX and prayer.
[8] R. Doc. 1.
[9] R. Doc. 5, ¶¶ 4, 7, and 14.
[10] R. Doc. 5, ⁋⁋ 8-14.
[11] R. Doc. 8. While Plaintiff also seeks remand for failure to establish the requisite amount in controversy for diversity subject matter jurisdiction, as remand is recommended based on lack of diversity, this issue is not reached; however, Garrison submitted documentation showing Plaintiff has already incurred more than $49,000 in medical expenses since the date of the accident. *See* R. Doc. 9, ¶ 11 and R. Doc. 11-8.
[12] R. Doc. 9.
[13] R. Docs. 16, 17 and 18.
[14] 28 U.S.C. § 1441(a).

2

amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[15] Subject matter jurisdiction must exist at the time of removal to federal court.[16] Remand is proper if at any time the court lacks subject matter jurisdiction.[17] The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[18]

### B. It Is Not Clear Under Applicable State Law that Penot and Hartford Have Been Taken Out of the Case

#### 1. Standard for Removal Based on a Voluntary Act of the Plaintiff that Eliminates the Nondiverse Defendant from the Case

A case that is not originally removable based on diversity jurisdiction because of the presence of a non-diverse defendant may be removed only after it is clear under applicable state law that the non-diverse defendant has been taken out of the case, leaving a controversy wholly between the plaintiff and diverse defendant.[19] A case may be removed based on any voluntary act of the plaintiff that eliminates the non-diverse defendant from the case.[20] Federal courts look to state law to determine if the non-diverse defendant is no longer effectively a party to the case.[21] The question of whether a settlement agreement has effectively removed the non-diverse party from the case requires the Court to examine the enforceability of the alleged agreement under the applicable state's law.[22] The removing defendant has the burden of establishing the existence of subject matter jurisdiction.[23]

---

[15] 28 U.S.C. § 1332(a)(1).
[16] *Hinkle v. USAA Gen. Indem. Co.*, No. 17-156, 2017 WL 4411052, at *3 (M.D. La. Sep. 11, 2017), report and recommendation adopted, No. 17-156, 2017 WL 4401631 (M.D. La. Sept. 29, 2017), citing *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).
[17] *See* 28 U.S.C. § 1447(c).
[18] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).
[19] *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 692 (5th Cir. 1995).
[20] *Estate of Martineau v. ARCO Chemical Co.*, 203 F.3d 904, 910 (5th Cir. 2000), citing *Vasquez*, 56 F.3d at 693.
[21] *Cella v. Allstate Property & Cas. Ins. Co.*, No. 10-2774, 2010 WL 4027712, at *2 (E.D. La. Oct. 13, 2010), citing *Estate of Martineau,* 203 F.3d at 910.
[22] *See Vasquez*, 56 F.3d at 693; *Estate of Martineau*, 203 F.3d at 910.
[23] *Vasquez*, 56 F.3d at 692.

3

The parties dispute whether Plaintiff, Penot, and Hartford reached an enforceable settlement agreement, which requires this Court to examine the purported agreement under Louisiana law.[24] If the Court finds that an enforceable settlement agreement was reached between these parties, then Penot (and Hartford) would be effectively removed from the case, and there would be complete diversity of citizenship between the remaining parties (Plaintiff and Garrison).

In Louisiana, a settlement agreement is known as a compromise.[25] To be valid and enforceable, Louisiana law prescribes that the compromise must either be 1) reduced to writing and signed by the parties participating in the settlement or their authorized agents; or 2) recited in open court, in which case the recitation shall be capable of being transcribed from the record of the proceedings.[26] If not recited in open court, until the parties sign a written document or documents demonstrating their consent to the terms of a proposed settlement agreement, a party is free to change his or her mind.[27]

La. Civ. Code art. 2997 also requires express authority to enter a compromise on behalf of another. Thus, the signature of a party's attorney alone is not sufficient to effect a compromise without the client's express authority to settle the claim.[28] According to *Coppage*, "[i]t is well-settled that a party's counsel does not have authority to settle a claim without his client's clear and express consent."[29] Instead, "[t]he general authority granted an attorney in an attorney/client

---

[24] *See Cella*, 2010 WL 4027712, at *2, citing *Estate of Martineau,* 203 F.3d at 910.
[25] *Aaron v. Bancroft Bag, Inc.*, No. 21-1082, 2021 WL 2374990, at *2 (E.D. La. June 10, 2021), citing La. C.C. art. 3071. Article 3071 defines a compromise as a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.
[26] *Sullivan v. Sullivan*, 95-2122 (La. 4/8/96), 671 So.2d 315, 317-18, citing La. C.C. art. 3071. Louisiana Civil Code art. 3072 now includes the writing requirement previously contained in Article 3071. *See Lemoine v. Thornton*, 13-889 (La.App. 3 Cir. 2/12/14), 161 So.3d 666, n. 1, writ denied, 2014-0541 (La. 4/25/14), 138 So.3d 648.
[27] *Sullivan,* 671 So.2d at 318.
[28] *Coppage v. Transdev Services, Inc.*, 2020-0419 (La.App. 4 Cir. 3/19/21), 320 So.3d 1206, 1211, *writ denied*, 2021-00549 (La. 6/8/21), 317 So.3d 328, citing La. C.C. art. 2997. Article 2997 provides that express authority is required to enter a compromise.
[29] *Coppage*, 320 So.3d at 1211, citing *Hayes v. Rollins*, 435 So.2d 1151, 1152 (La.App. 3 Cir. 1983) and *Lemoine v. Thornton,* 2013-0889 (La.App. 3 Cir. 2/12/14), 161 So.3d 666, 671.

contract of employment 'to settle' the client's case constitutes only the authority to *negotiate* a settlement."[30] Louisiana law presumes that defendants are aware of the requirement of obtaining the explicit consent of the plaintiff to settle, and that defendants "assume the risk of their failure to determine that such requirements have been met."[31]

   2. Analysis

In support of its argument that Plaintiff, Penot, and Hartford reached a valid and enforceable settlement agreement in this case, Garrison points to a May 2, 2022 letter from Plaintiff's counsel to a Hartford representative ("the May 2022 demand letter"), that states in pertinent part:

> Enclosed please find documentation to substantiate the claims of my client, Sonia M Policarpi-Datrindade, for all damages sustained as a direct result of the collision with your insured…We believe that the injuries sustained by our client clearly exceed the applicable liability coverage. We now demand that Hartford Accident & Indemnity Company…tender the full policy limits in effect on the date of loss to Sonia M Policarpi-Datrindade in full and complete compensation for all damages sustained as a direct result of the collision with your insured on September 10, 2021.
>
> Despite the fact that the damages exceed the policy limits, **we will recommend our client to execute a full release in favor of your insured in exchange for payment of the policy limits**. In addition, a certified copy of the declaration page and an affidavit attesting to the fact that your insured is not covered by any other insurance coverage in effect on the date of loss are required. Failure to tender the full policy limits at this time will expose your insured to substantial <u>personal</u> liability. If the full policy limits are not received within twenty-five (25) days, we will file formal legal proceedings for all damages available under law.
>
> [Bolded emphasis added].[32]

---

[30] *Coppage*, 320 So.3d at 1211, citing *Bennett v. Great Atlantic & Pacific Tea Co., Inc*., 95-0410 (La.App. 1 Cir. 11/9/95), 665 So.2d 84, 86, writ denied, 95-2981 (La. 2/9/96), 667 So.2d 536 (emphasis added).
[31] *Coppage,* 320 So.3d at 1212, quoting *Townsend v. Square*, 94-0758 (La.App. 4 Cir. 9/29/94), 643 So.2d 787, 790.
[32] R. Doc. 11-9.

5

The letter was not signed by Plaintiff or her counsel.

Garrison then points to a May 20, 2022 Hartford check made out to Plaintiff and her attorney for Hartford's purported policy limits ($15,000) and an unsigned release Hartford subsequently sent to Plaintiff's attorney.[33] Garrison contends that a valid and enforceable settlement agreement was effectuated by the combination of the May 2022 demand letter (which Garrison characterizes as a settlement offer) and the Hartford check and release (which Garrison characterizes as Hartford's acceptance).[34] It is undisputed that the Hartford check was never cashed and the Hartford release was never signed. As the party seeking removal, Garrison has the burden of demonstrating the existence of an enforceable settlement agreement.[35] The facts are considered in the light most favorable to Plaintiff.[36]

Garrison's evidence fails to establish an enforceable settlement agreement under Louisiana law. The May 2022 demand letter was not signed by Plaintiff or her attorney, as Louisiana courts require to confect an enforceable compromise under La. Civ Code art. 3071.[37] There is also no evidence that Plaintiff's counsel had the requisite authority from her client to settle the case, as La. Civ. Code art. 2997 requires. If anything, the May 2022 demand letter indicates that Plaintiff's counsel did not have her client's express authority to settle, as the demand letter only indicates that the attorney will "recommend" to her client that a release be executed in favor of Penot if the proposed conditions are met. Plaintiff has also presented the Court with an affidavit from

---

[33] R. Doc. 11-5 and R. Doc. 11-2, p. 9.
[34] R. Doc. 9, p. 5.
[35] *Lee v. Progressive Select Insurance Co.*, No. 17-5549, 2017 WL 3575167, at *2 (E.D. La. Aug. 18, 2017), citing *Wilson v. Republic Iron & Steel Co., No. 21*, 257 U.S. 92, 97 (1921); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996).
[36] *Lee*, 2017 WL 3575167, a *2.
[37] *See Sullivan,* 671 So.2d at 318. *See also Lemoine,* 161 So.3d at 671 and n. 1 (citations omitted).

Plaintiff's then counsel attesting to the fact that she did not have "express consent/authorization" from Plaintiff to settle Plaintiff's claims against Penot (or Hartford).[38]

Meanwhile, Garrison acknowledges that it is unable to supply evidence that Plaintiff gave her counsel express authority to settle the case.[39] Instead, Garrison argues-- without citation to any supporting statute or cases-- that it could "rely on the apparent scope" of Plaintiff counsel's authority to demand a settlement from Hartford via the May 2022 demand letter.[40] However, Garrison's reliance on the doctrine of apparent authority lacks merit.

"Apparent authority is a doctrine by which an agent is empowered to bind his principal in a transaction with a third person when the principal has made a manifestation to the third person, or to the community of which the third person is a member, that the agent is authorized to engage in the particular transaction, although the principal has not actually delegated this authority to the agent."[41] "To trigger the concept of apparent authority, the third party must prove that the principal gave the third party reason to believe that the agent had authority to act on the principal's behalf with respect to the particular action taken and that the third party reasonably relied upon the manifested authority of the agent."[42] The United States Supreme Court has held that an attorney has no authority, implied from the mere fact of representation, to settle a client's case.[43]

---

[38] R. Doc. 14-3.
[39] R. Doc. 17, p. 3.
[40] R. Doc. 17, p. 3.
[41] *Tedesco v. Gentry Development, Inc.*, 540 So.2d 960, 963 (La. 1989), citing Restatement (Second) of Agency § 8 (1958); W. Seavey, Law of Agency §8(D) (1968); F. Mechem, Law of Agency § 84 (4th ed. 1952); Comment, *Agency Power in Louisiana*, 40 Tul.L.Rev. 110 (1965).
[42] *Accusess Environmental, Inc., v. Walker*, 2015-0008 (La.App. 1 Cir. 12/17/15), 185 So.3d 69, 76, quoting *Builders Supply of Ruston, Inc. v. Qualls*, 32,630 (La.App. 2 Cir. 1/26/00), 750 So.2d 427, 430.
[43] *United States v. Beebe*, 180 U.S. 343, 351-52 (1901) ("Indeed, the utter want of power of an attorney, by virtue of his general retainer only, to compromise his client's claim, cannot, we think, be successfully disputed. A judgment entered upon such a compromise is subject to be set aside on the ground of the lack of authority in the attorney to make the compromise upon which the judgment rests. Prima facie, the act of the attorney in making such compromise and entering or permitting to be entered such judgment is valid, because it is assumed the attorney acted with special authority, *but when it is proved he had none, the judgment will be vacated on that ground*.") (emphasis added).

7

For apparent authority to apply, Garrison must first show that the *principal* acted to manifest the alleged agent's authority to an innocent third party. In *Downman Urgent Healthcare Clinic, Inc. v. Zurich North Am. Ins. Co.*,[44] the court found that apparent authority did not apply because the plaintiff there relied only on the statement made by the agent, but not any assertions made by the principal. Here, there is no evidence that Plaintiff (the principal) made any representations at all to Garrison (or to anyone) manifesting her then attorney's alleged authority to settle the claims with Hartford, as would be required for application of the apparent authority doctrine. Without any evidence that Garrison relied on an assertions made by the Plaintiff (as principal), Garrison cannot invoke the apparent authority doctrine.[45]

Moreover, the apparent authority doctrine cannot supplant the fundamental requirement of La. Civ. Code article 2997 that an attorney must have the client's express authority to enter a compromise. While Garrison suggests that an attorney's apparent authority to negotiate a settlement can suffice in the absence of express authority, the case Garrison relies on did not involve the application of Louisiana law.[46] Rather, the *Smedley* case involved claims brought under the Jones Act and general maritime law, which required the Court to apply federal law to decide the validity of the settlement agreement before it.[47] In other words, the *Smedley* court was not bound, as this Court is, to apply La. Civ. Code art. 2997 and that article was not cited or otherwise addressed in the *Smedley* opinion. The *Smedley* case is further distinguishable on the facts. There, the defendant argued that it was not bound by a settlement agreement on grounds it

---

[44] No. 06-8701, 2008 WL 2510584 (E.D. La. June 17, 2008) ("In order for the doctrine of apparent authority to apply, Plaintiff must first show that the principal acted to manifest the alleged agent's authority to an innocent third party."); *see also Richard A. Cheramie Enterprises, Inc. v. Mt. Airy Refining Co.*, 708 F.2d 156, 158 (5th Cir. 1983) (finding that implied agency "may not be established by the words of the purported agent.")
[45] *See, e.g., Downman*, 2008 WL 210584, at *3.
[46] R. Doc. 17, p. 2., citing *Smedley v. Temple Drilling Co.*, 782 F.2d 1357 (5th Cir. 1986).
[47] *See Smedley*, 782 F.2d at 1358. *See also Mid-South Towing Company v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984); *In re. Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015).

never gave its attorney express authority to settle the case. In rejecting the argument, the court recognized that the insurance adjuster who authorized the settlement on the defendant's behalf had actual authority to do so because the defendant had previously given the adjuster a general grant of authority to settle claims on its behalf. The *Smedley* court also found that the defendant had ratified the settlement by accepting the benefits and not challenging it in a timely manner, which is not the case here.

Garrison asks the Court to find that the unsigned demand letter sent from Plaintiff's counsel to Hartford was sufficient to bind the Plaintiff to a settlement, notwithstanding the attorney's sworn statement that she did not have Plaintiff's express authority to enter a settlement, and the absence of any other proof that Plaintiff gave her attorney express authority to settle the case on her behalf, or held her attorney out to have such authority. While Louisiana jurisprudence does not always require a client's express authority to be in writing, some type of proof that a party gave the attorney authority to settle the case is required for an enforceable settlement agreement.[48] Because Garrison has failed to prove that Plaintiff gave her attorney express authority to settle the case on her behalf, Garrison cannot establish that an enforceable settlement agreement exists between

---

[48] *See, e.g., Felder v. Georgia Pacific Corp.*, 405 So.2d 521 (La. 1981), (affirming a judgment sustaining an exception of *res judicata*, finding a valid compromise agreement was reached as evidenced by the fact the plaintiff signed the release); *Coppage*, 320 So.3d 1206 (reversing grant of a Motion to Enforce Settlement on grounds the negotiating attorney did not have his client's clear and express consent to enter into a binding agreement to settle); *Lemoine*, 161 So.3d 666 (reversing grant of a Motion to Enforcement Settlement, finding among other things that the negotiating attorney did not have specific authority to settle his client's claims); *Townsend,* 643 So.2d 787, (reversing grant of a Motion to Enforce Settlement, rejecting an apparent authority argument and finding no reasonable basis to believe the plaintiff acquiesced to the settlement agreement negotiated by the parties' respective attorneys); *F&S Equipment Co., Inc. v. International Matex Tank Terminals*, 469 So.2d 256 (La.App. 4 Cir. 1985), (reversing grant of an exception of *res judicata*, finding no evidence the Plaintiff acquiesced in the settlement and finding the Plaintiff's attorney could not enter a binding agreement on the client's behalf without the client's consent); *Hayes, 4*35 So.2d 1151, (affirming rejection of attorney's fees on grounds there was no evidence the defendant ever gave its attorney clear and express consent to settle the claim). *See also Dozier v. Rhodus*, 2008-1813 (La.App. 1 Cir. 5/5/09), 17 So.3d 402, writ denied, 2009-1647 (La. Oct. 30, 2009), 21 So.3d 294, (finding evidence of the party's consent to settlement in a written document stating that the terms of the agreement had been discussed with, and authorized by, the party).

Plaintiff, Penot, and Hartford under Louisiana law. Because Penot, a Louisiana citizen like Plaintiff, remains a party to the suit, there is not complete diversity of citizenship.[49]

### C. The Motive of a Plaintiff in Joining Defendants is Immaterial, Provided There Is a Good Faith Cause of Action Against Those Joined

Garrison also argues the citizenship of Penot should be disregarded because Plaintiff is intentionally attempting to evade the Court's diversity subject matter jurisdiction.[50] Garrison suggests Plaintiff's refusal to cash the check she received from Hartford constitutes proof that Penot (and Hartford) have been fraudulently joined. However, these allegations-- even if proven-- are irrelevant to the Fifth Circuit's improper joinder standard.

*Smallwood v. Illinois Cent. R. Co.* is the seminal decision of the U.S. Court of Appeals for the Fifth Circuit on the issue.[51] According to *Smallwood,* there are two ways to establish improper joinder: "'(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"[52] "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."[53] If a non-diverse defendant is improperly joined, a district court can disregard the citizenship of that defendant for the purposes of evaluating jurisdiction.[54] The motive or purpose of the joinder of the in-state defendant is not relevant.[55]

Here, Garrison does not tether its arguments to either method of establishing improper joinder.[56] Instead, Garrison cites *Hoyt v. Lane Construction Corp*. for the proposition that Plaintiff

---

[49] *See Cella*, 2010 WL 4027712, at *3.
[50] *See* R. Doc. 17, pp. 6-7. *See also* R. Doc. 8-1, p. 6 (where Plaintiff's counsel acknowledges that Plaintiff did not settle with the non-diverse defendant to "defeat diversity").
[51] *Smallwood,* 385 F.3d 568, 573 (5th Cir. 2004).
[52] *Id*., quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003).
[53] *Smallwood,* 385 F.3d at 574.
[54] *Williams v. Homeland Insurance Company of New York,* 18 F.4th 806, 812 (5th Cir. 2021), citing *Flagg v. Stryker Corp.,* 819 F.3d 132, 137 (5th Cir. 2016).
[55] *Smallwood,* 385 F.3d at 574.
[56] R. Doc. 9, pp. 4-6.

was acting in bad faith.[57]  However, *Hoyt* did not involve an improper joinder argument.  Rather, the *Hoyt* court was considering whether a party had acted in bad faith within the meaning of 28 U.S.C. § 1446(c), which prohibits removals that occur more than 1 year after commencement of an action except in instances where the plaintiff "acted in bad faith" to prevent a defendant from removing the action.[58]  In its analysis, the *Hoyt* court made a point to distinguish the improper joinder analysis--which focuses on what the plaintiff might prove *in the future*--from the "bad faith" analysis under 28 U.S.C. § 1446--which focuses on what motivated the plaintiff *in the past*.[59]  Garrison fails to establish the relevance of Plaintiff's motives to the improper joinder analysis.[60]

Rather, the United States Supreme Court has held that in a removal proceeding, the motive of a plaintiff in joining defendants is immaterial, provided there is a good faith cause of action against those joined.[61]  In this case, Plaintiff filed a garden variety tort claim seeking damages for alleged injuries she sustained after Penot rear-ended her vehicle.[62]  Garrison does not allege that Plaintiff has fraudulently pleaded the relevant jurisdictional facts (here, her citizenship), and indeed, admits that Penot is a Louisiana citizen.[63]  Further, Garrison does not even attempt to argue that Plaintiff cannot state a cause of action against Penot under the facts as pleaded in the Petition.  Instead, Garrison has asked this Court to find that the claims against Penot (and her liability insurer, Hartford) were precluded either because the Plaintiff settled with these defendants or because Plaintiff intentionally sought to defeat diversity subject matter jurisdiction by not perfecting the settlement, arguments shown to lack merit for the reasons stated above.  Because Garrison failed

---

[57] *Hoyt v. Lane Construction Corporation*, 927 F.3d 287 (5th Cir. 2019).
[58] *Id.*, at 293.
[59] *Id.*
[60] This Report and Recommendation does not pass on the effect under 28 U.S.C. § 1446(c) if Plaintiff does ultimately cash the check from Hartford and/or otherwise evidence an intent to be bound by the purported settlement.
[61] *Mecom v. Fitzsimmons Drilling Co., No. 32,* 284 U.S.183, 189 (1931).
[62] R. Doc. 11-1.
[63] R. Doc. 1, ¶ 7.

to satisfy its heavy burden of proving that Penot was improperly joined, the Louisiana citizenship of Penot cannot be disregarded, and this Court lacks subject matter jurisdiction.[64]

### III. RECOMMENDATION

Based on the record now before the Court, Garrison has failed to meet its burden of proving the existence of an enforceable settlement agreement between Plaintiff, Penot, and Hartford. Garrison has also failed to meet its burden of proving that Penot and Hartford were improperly joined under *Smallwood*. Because Plaintiff Sonia Policarpi-Datrindade and Defendant Elaine Penot are both Louisiana citizens, there is not complete diversity of citizenship between the parties. As such, the Court lacks subject matter jurisdiction and remand is warranted.[65]

Accordingly,

**IT IS RECOMMENDED** that the Motion to Remand,[66] filed by Sonia Policarpi-Datrindade, be **GRANTED,** remanding this matter to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, for lack of subject matter jurisdiction.

Signed in Baton Rouge, Louisiana, on February 16, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[64] Subject matter jurisdiction is only alleged under 28 U.S.C. § 1332, and it does not appear that any other basis for subject matter jurisdiction exists.
[65] *See Cella*, 2010 WL 4027712, at *3.
[66] R. Doc. 8.

12